UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JULIAN OKEAYAINNEH,                             CIV. NO. 12-2200(PJS/JSM)

        Plaintiff,                                REPORT AND RECOMMENDATION

v.

STAR TRIBUNE MEDIA COMPANY, LLC
DAVID CHANEN and DAN BROWNING,

        Defendants.

The above matter came before the undersigned on defendants' Motion to Dismiss [Docket No. 46]. Pursuant to this Court's Order of May 1, 2013 [Docket No. 50], this Report and Recommendation is based on the parties' written submissions.

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(A), (B) and Local Rule 72.1(c).

I.     **BACKGROUND**

      A.     **Plaintiff's Complaint**

Plaintiff is a prisoner incarcerated at a federal prison in California. Plaintiff, who is pro se, has sued the Star Tribune Media Company, LLC ("Star Tribune"), publisher Dan Browning and Star Tribune reporter David Chanen[1] for the Star Tribune's reporting on plaintiff's criminal case.

On August 13, 2012, Chief Judge Michael Davis sentenced plaintiff to 324 months (27 years) in prison for his role in a fraud and identify theft scheme. See United

---

[1] Plaintiff identified Chanen as a "publisher" in the Complaint. Complaint, ¶4 [Docket No. 1]. Chanen is the Star Tribune reportere who wrote the story at issue in plaintiff's Complaint. Declaration of David Chanen ("Chanen Decl."), ¶¶1-2 [Docket No. 48].

States v. Okeayainneh, 11-cr-87(MJD/JJK), Judgment in a Criminal Case [Docket No. 759]; Transcript of Sentencing Hearing, pp. 32-33 [Docket No. 880].[2]

Plaintiff's Complaint alleged that defendants defamed him by publishing the following false and defamatory statement in the Star Tribune newspaper on August 6, 2012: "Later this month, Julian Okeayainneh, one of the ring's kingpins 'is scheduled to be sentenced to life in prison', the longest punishment handed down for an identity theft case." Complaint, p. 1. Plaintiff alleged that his reputation was "injured and ridiculed" as a result of this defamatory statement. Id., ¶6. According to plaintiff, there was no evidence that he could be sentenced to life in prison and the United States sought a term of imprisonment of thirty years, with four consecutive two year terms, for a total of thirty-eight years. Id., ¶7 (citing Government's Response to Defendants' Sentencing Positions, 11-cr-87(MJD/JJK) [Docket No. 727]). Plaintiff contended that the defendants failed to follow their "standard procedure" in investigative reporting when they falsely reported that plaintiff would be sentenced to life in prison. Id., ¶8. Plaintiff did not identify this "standard procedure".

Plaintiff sued under 42 U.S.C. §1983, alleging that "a civil rights lawsuit is actionable under §1983 if the defamatory statement is based on the lies of the Star Tribune Media Company, LLC Publishers." Id., ¶9 (citing Martinez v. City of Schenectady, 115 F.3d 111, 115 (2nd Cir. 1997)). Plaintiff alleged that the federal court

---

[2] The Court may consider these criminal docket entries without converting defendants' Motion to Dismiss to a Motion for Summary Judgment. See Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007) (the court may consider public records on a motion to dismiss); Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (in a Rule 12 motion to dismiss the court "may consider. . . materials that are necessarily embraced by the pleadings.").

2

has jurisdiction over this matter pursuant to 42 U.S.C. §§1983, 1985; 28 U.S.C. §§1343, 2201, 2202 and 1367(a). Id.,¶1. As relief, plaintiff sought compensatory damages in an amount to be determined by a jury and a declaratory judgment that defendants violated his constitutional rights. Complaint, Prayer for Relief, ¶¶1-6.

A document entitled "Plaintiff Julian Okeayainneh Affidavit in Support of Tort Claim of "Defamation of Character" and Imposition of Lien Upon Defendants" ("Pl. Aff.") [Docket No. 2] was filed the same day the Complaint was filed.[3] In this affidavit, plaintiff described in more detail how he believed defendants injured him though their publication of the allegedly defamatory statement about his sentencing. Plaintiff stated that as a customer of the Star Tribune newspaper, he had a right to enforce the Star Tribune's "specific performance in media and investigative journalism" through a "specific performance lien," which plaintiff alleged was a Fifth Amendment right. Id., ¶2. Plaintiff further contended that defendants violated their "code of ethics" by publishing the false statement and violated his Fourteenth Amendment right to Equal Protection. Id., ¶5(B). Plaintiff stated that defendants "conspired with other persons, known and unknown to the plaintiff in the State of Minnesota and elsewhere without lawful justification in publishing a defamatory statement against Plaintiff Julian Okeayainneh, a resident-customer to the United States to the United States federal corporate." Id., ¶5(C). Plaintiff claimed that he "seized [defendants] property with a Fifth Amendment U.S. Constitutional Consensual Commercial lien for Commercial Tort Claim Compensation." Id. Plaintiff stated that he was assessing damages against defendants

---

[3] Docket 1-1 is a letter from plaintiff to the Clerk of Court directing the Clerk to scan and file his Complaint "with Affidavit in Support." The Court has construed Docket No. 2 as plaintiff's affidavit in support of the Complaint.

3

at a rate to be determined by a jury commencing on August 6, 2012 and continuing until plaintiff's release from prison.  Id., ¶7.

B.  **Defendants' Motion to Dismiss**

In lieu of answering, defendants moved to dismiss the Complaint.  Defendants' Memorandum of Law in Support of Motion to Dismiss ("Def. Mem."), p. 1 [Docket No. 47].[4]  Defendants moved for dismissal under Fed. R. Civ. P. 12(b)(1), lack of subject matter jurisdiction and 12(B)(6), failure to state a claim.  Id.

Defendants admitted that the supposedly defamatory statement about plaintiff being "scheduled to be sentenced to life in prison" appeared in a news report authored by Chanen and published on August 6, 2012.  Id., p. 2; Chanen Decl., ¶2.[5]  Chanen stated that he relied on the Government's Position on Defendants' Sentencing [11-cr-87, Docket No. 718] when wrote his story.  Chanen Decl., ¶3.  That filing noted that "[t]he Pre-Sentence Report (PSR) prepared by the United States Probation Office correctly calculated defendant Okeayainneh's advisory guidelines sentence to be life imprisonment plus two years for each of the Aggravated Identity counts of conviction." Def. Mem., p. 4 (quoting Government's Position on Defendants' Sentencing, p. 2). Furthermore, this statement was also borne out by statements made at the Sentencing Hearing by the Government's attorney and the court.  Transcript of Sentencing Hearing at 30 (statement by government attorney that "We could have asked for life.  We did

---

[4]  Defendants did not number the pages of their memorandum. The Court is citing to the page numbers assigned through CM/ECF.

[5]  The content of the Chanen declaration and the news story are matters "necessarily embraced by the pleadings" and the Court is entitled to consider them without converting defendants' motion to one for summary judgment. Porous Media Corp., 186 F.3d at 1079.

4

not."); id. at 31–32 (court stating that "The presentence investigation advisory guideline calculations have been given, but I will give them again. . . . [I]mprisonment range of life plus 24 months consecutive. . . .").

Defendants argued that plaintiff's assertion that he had a cause of action for defamation under §1983 did not change the fact that defamation is a state law cause of action and does not give rise to federal question jurisdiction. To the extent that plaintiff was alleging that defendants violated his constitutional rights, he failed to allege that the defendants carried out their actions under color of state law—a prerequisite for a constitutional claim. Def. Mem., pp. 5-6. As a result, the Court lacks jurisdiction under 28 U.S.C. §1331. Defendants also argued that the Court lacked diversity jurisdiction under 28 U.S.C. §1332 because plaintiff failed to allege damages in excess of $75,000. Id., p. 6.

Regarding the merits of plaintiff's defamation cause of action, defendants alleged the sentencing statement was "substantially true" and thus, could not be defamatory under Minnesota law. Id., p. 9 (citing Jadwin v. Minneapolis Star & Tribune Co., 390 N.W.2d 437, 441 (Minn. Ct. App. 1986)). Under Minnesota law, a cause of action for defamation requires (1) a false and defamatory statement about the plaintiff; (2) an unprivileged publication to a third party; (3) a tendency to harm plaintiff's reputation in the community; and (4) fault amounting to at least negligence. Id., p. 7. According to defendants, nothing in the Complaint refuted that plaintiff was scheduled to be sentenced to life in prison, only that Chief Judge Davis ultimately sentenced plaintiff to twenty-seven years in prison, not life. Id., p. 9. Defendants argued that because

5

plaintiff cannot show that the statement was "substantially untrue," plaintiff's claims were subject to dismissal under Rule 12(b)(6). Id., p. 10.

Finally, defendants asserted the Complaint was silent as to any allegations regarding defendant Dan Browning, therefore the Complaint as to Browning should be dismissed under Rule 12(b)(6). Id., pp. 10-11.

### C. Plaintiff's Subsequent Pleadings

After defendants filed their motion to dismiss and supporting papers and within the time permitted for a response,[6] plaintiff filed the following documents: (1) Ex-Parte Pleading and Brief in Support for Summary Judgment in Dishonor Pursuant to 5 U.S.C §703; Title 5 U.S.C. §556 'D'; Title 42 U.S.C. §1983 and Reply to Defendants Motion to Dismiss ("Pl. Resp.") [Docket No. 53]; Affidavit of Julian Okeayainneh ("Pl. Resp. Aff.") [Docket No. 54]; Addendum to Pleading and Brief in Support of Summary Judgment in Dishonor Pursuant to: In the Nature of to 5 U.S.C §703; Title 5 U.S.C. §556 'D'; Title 42 U.S.C. §1983 and Reply to Defendants Motion to Dismiss and Court Relax its Rule Regarding Number of Words ("Pl. Suppl. Resp.") [Docket No. 57].[7] The Court had read

---

[6] See Order, May 1, 2013, ¶1 (requiring plaintiff to fie and serve a response to defendants Motion to Dismiss on or before May 28, 2013).

[7] Plaintiff's Supplemental Response sought relief from that provision of this Court's May 1, 2013 Order that limited plaintiff's response to defendant's motion to dismiss to 12,000 words. Plaintiff did not submit any word count certificates pursuant to Local Rule 7.1(f)(2) and this Court did not independently count the number of words in plaintiff's response documents. It did not appear to this Court that the three documents exceeded 12,000 words, but even if they did, the Court considered the documents in making its recommendations.

these documents with the liberality that must be accorded to pro se pleadings[8] and has treated them collectively as plaintiff's response to defendants' Motion to Dismiss.

Plaintiff's response is very unclear. Plaintiff alleged that he was proceeding under 5 U.S.C. §703, which relates to judicial review of final agency action under the Administrative Procedures Act ("APA") and Title 5, §556(D)[d], which describes the burden of proof for a proponent of a rule or order under the APA. These provisions clearly have no application to plaintiff's suit, as no federal agency has been involved in the story by the Star Tribune.

The gist of plaintiff's response was that defendants[9] knowingly and intentionally published false information about plaintiff for their own profit. Pl. Resp., p. 10. Plaintiff alleged that he entered into an agreement with respondents/defendants wherein respondents/defendants agreed to pay nine million dollars to "Claimant"—presumably plaintiff. Id., p. 11.

Plaintiff also explained that Browning had written other articles published in the Star Tribune regarding his criminal case and opined that Browning "must have shared and provided information to David Chanen" before Chanen's story containing the allegedly defamatory statement was published. Id., p. 7.

---

[8] See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Federal Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008) (pro se litigants are held to a lesser pleading standard than represented parties).

[9] The caption to plaintiff's response contains the name of a defendant not named in the Complaint—Michael Klingensmith—who is identified as the "CEO/Publisher." Id., p. 1. This Court's liberal construction of plaintiff's pleadings does not extend to treating a party as a defendant who was not named in the Complaint.

Plaintiff's Response Affidavit is also unclear but again stated that defendants' report about his sentencing was defamatory and harmed him. Pl. Response Aff., ¶6.[10]

On June 3, 2013, defendants' counsel wrote to this Court indicating that she had reviewed the pleadings plaintiff filed since defendants filed their motion to dismiss and defendants determined that no reply was necessary. Defendants stated that they would rely on their Memorandum in support of their motion to dismiss in lieu of filing a reply. Letter to Magistrate Judge [Docket No. 57].

## II. LEGAL STANDARDS

Federal courts are courts of limited jurisdiction. Steel Co. v. Citizens for a Better Env't, 523 U. S. 83, 94-95 (1998). "The requirement that jurisdiction be established as a threshold matter spring[s] from the nature and limits of the judicial power of the United States' and is inflexible and without exception. Id. (internal quotation and citation omitted.). To invoke federal-question jurisdiction, a plaintiff must plead a cause of action arising under federal law or the Constitution. 28 U.S.C. §1331. A complaint states a federal cause of action when it appears on the face of a well-pleaded

---

[10] This affidavit also references several documents plaintiff filed before defendants moved to dismiss, including "Conditional Acceptance-Request for Proof of Claim to Your Article Published August 6, 2012" [Docket No. 20]; Notice of Fault and Opportunity to Cure and Contest Acceptance [Docket No. 28]; Affidavit of Notice of Default and of Res Judicata [Docket No. 31]; Notice of Dishonor [Docket No. 45]. These pleadings are nonsensical and describe plaintiff as a "holder in due course" of registered priority lien interest in "all property held in the name of the debtor: Star Tribune Media Company, LLS, Star Tribune Media Company, Star Tribune; Michael Klingensmith (CEO/Publisher); David Chanen (Publisher/Reporter); and Dan Browning (Publisher/Reporter)." As the Court understands it, plaintiff apparently believes that by not responding to plaintiff's "request for proof of claim" that defendants somehow agreed to pay plaintiff $9.0 million because their "silence equated to an agreement." Pl. Resp. Aff., ¶11.

complaint. Oglala Sioux Tribe v. C & W Enterp., Inc., 487 F.3d 1129, 1131 (8th Cir. 2007) (citation omitted).

"A court does not obtain subject-matter jurisdiction just because a plaintiff raises a federal question in his or her complaint." Biscanin, 407 F.3d at 907 (citations omitted). In other words, merely because a plaintiff states in the complaint that the Court has subject matter jurisdiction does not make it so. It is the burden of the party asserting jurisdiction to prove by a preponderance of the evidence that jurisdiction exists. VS Ltd. P'ship v. Department of Hous. & Urban Dev., 235 F.3d 1109, 1112 (8th Cir. 2000). "Dismissal for lack of subject matter jurisdiction will not be granted lightly." Wheeler v. St. Louis Sw. Ry. Co., 90 F.3d 327, 329 (8th Cir. 1996).

Pursuant to 28 U.S.C. § 1332, a federal court "shall have jurisdiction over a civil action where the matter in controversy exceeds the sum or value of $75,000," and is between citizens of different states. In a challenge to diversity jurisdiction, "the proponent of diversity jurisdiction has the burden of proving that the amount in controversy exceeds the jurisdictional minimum." Bell v. Hershey Co., 557 F.3d 953, 956 (8th Cir. 2009). "While [the Supreme Court] established that when a defendant challenges the plaintiff's allegations of the amount in controversy, a plaintiff must establish jurisdiction by a preponderance of the evidence, [the Supreme Court did] not suggest that unliquidated damages in some specific amount must be proved before trial by a preponderance of evidence." OnePoint Solutions, LLC v. Borchert, 486 F.3d 342, 349 (8th Cir. 2007) (internal quotation marks omitted)). "This standard applies regardless of whether 'the complaint alleges no specific amount of damages or an amount under the jurisdictional minimum.'" Bell, 557 F.3d at 956 (quoting In re Minn.

9

Mut. Life Ins. Co. Sales Practices Litig., 346 F.3d 830, 834 (8th Cir. 2003)). Under the preponderance standard, "[t]he jurisdictional fact ... is not whether the damages are greater than the requisite amount, but whether a fact finder might legally conclude that they are."

A motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may challenge the plaintiff's complaint either on its face or on the factual truthfulness of its averments. See Osborn v. United States, 918 F.2d 724, 729 fn.6 (8th Cir. 1990). In a facial challenge to jurisdiction, the court "determines whether the asserted jurisdictional basis is patently meritless by looking to the face of the complaint, and drawing all reasonable inferences in favor of the [non-moving party]." Biscanin v. Merrill Lynch & Co., Inc., 407 F.3d 905, 907 (8th Cir. 2005) (citations omitted). See also Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993) ("In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction.") (citation omitted). When a defendant brings a facial challenge to subject matter jurisdiction, the court reviews only the pleadings, and the non-moving party receives the same protections as it would defending Rule 12(b)(6) motion. Osborn, 918 F.2d at 729, fn. 6. In a factual challenge to jurisdiction, the court may consider matters outside the pleadings and the non-moving party does not benefit from the safeguards of Rule 12(b)(6). Id.

Defendants did not state whether they were bringing a facial or factual challenge to subject matter jurisdiction, but it was clear to this Court that the challenge was facial.

Thus, the Court analyzes the contents of plaintiff's Complaint to determine whether subject matter jurisdiction exists.

## III. DISCUSSION

### A. <u>**Plaintiff's Complaint Raised No Federal Questions**</u>

It was abundantly clear to this Court that plaintiff's cause of action sounded in state tort law, not federal law. In fact, his Complaint is entitled "Complaint Tort Claim 'Defamation of Character' with Affidavit in Support." Although plaintiff invokes §1983, "[t]o state a claim under 42 U.S.C. § 1983, a plaintiff must show that he was deprived of a right secured by the Constitution and the laws of the United States and that the deprivation was committed by a person acting under color of state law." <u>Alexander v. Hedback</u>, 718 F.3d 762, 765 (8th Cir. 2013) (citing <u>Lind v. Midland Funding, L.L.C.</u>, 688 F.3d 402, 405 (8th Cir.2012)). Here, there is no allegation that the defendants are anything other than private persons and a private corporation. Therefore, as a matter of law, his defamation claim is a state law claim that does not give rise to federal question jurisdiction under §1983.[11]

For the same reason, plaintiff's invocation of the Equal Protection Clause of the Fourteenth Amendment in his responsive pleadings does not establish federal question jurisdiction. Plaintiff failed to plead any facts in support of an Equal Protection claim.

---

[11] The cases plaintiff cited in support of his §1983 claim have nothing to do with defamation and both involved state actors. <u>Mastroianni v. Bowers</u>, 160 F.3d 671 (11th Cir. 1998) involved a claim by a deputy sheriff that the state attorney general, assistant attorney general and state law enforcement officers conspired to violate his constitutional rights. <u>Martinez v. City of Schenectady</u>, 115 F.3d 111, 115 (2nd Cir. 1997) addressed qualified immunity in the context of probable cause to support a search warrant.

The Equal Protection Clause of the Fourteenth Amendment forbids a state from denying "any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, §1. To succeed on an equal protection claim, a claimant must prove that he has been treated differently from other similarly situated individuals, either by operation of a state law or regulation, or by a decision by a state official. See Bogren v. Minnesota, 236 F.3d 399, 408 (8th Cir. 2000) ("In general, the Equal Protection Clause requires that state actors treat similarly situated people alike."), cert denied, 534 U.S. 816 (2001) (citing Klinger v. Dep't. of Corrs., 31 F.3d 727, 731 (8th Cir. 1994), cert. denied, 513 U.S. 1185 (1995)). The two groups must be similarly situated "in all relevant respects." Carter v. Arkansas, 392 F.3d 965, 968 (8th Cir.2004).

It is not enough for an Equal Protection claimant to show that he has been treated differently from others who are similarly situated; he must also show that there is no rational basis for the dissimilar treatment. Costello v. Mitchell Pub. Sch. Dist. 79, 266 F.3d 916, 921 (8th Cir. 2001) ("[a] plaintiff may bring an equal protection claim... where she alleges 'that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment'") (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam)).

Here, the Complaint and subsequent pleadings are silent as to any of the elements of an Equal Protection claim—plaintiff did not assert that he was treated differently from similarly situated individuals; he did not identify any similarly situated individuals; and he did not identify any state law or action by a state actor that was at issue. Plaintiff's Equal Protection claims are meritless.

Plaintiff's Affidavit also alleged that he had some kind of commercial tort claim against the defendants and that he had a "specific performance lien" guaranteed by the Fifth Amendment. Pl. Aff., ¶2. One other federal court has addressed and rejected this legal theory (i.e. that plaintiff can establish a consensual commercial lien pursuant to the Fifth Amendment), stating:

> To read these documents (the full texts of which are set out in the margin)[12] is to recognize the fundamental frivolity of the legal tenets espoused therein. We are not familiar with a citizen-customer's authority to exact a consensual commercial lien from a public official, but it is a power that has no mooring in either federal or state law. The liens, in any event, purport to secure assets to which Mr. McKinley would have no legal claim even were his civil rights action to succeed.

United States v. McKinley, 53 F.3d 1170, 1172 (10th Cir. 1995).

---

[12] In McKinley, a prisoner had filed liens purporting to encumber the property of the prosecutor and presiding judge. The form lien stated:

> You are my public servant, and I am your citizen-customer, and pursuant to the Equal Protection of the law I have the commercial power to enforce your specific performance (oath of office) with a Commercial Just Compensation Customer's Lien, called a specific performance lien, guaranteed specifically and expressly by the Fifth Amendment to the U.S. Constitution, regarding Just Compensation.

53 F.3d at 1172, n. 1. The language in paragraph two of plaintiff's affidavit tracks this language almost verbatim:

> You are my media Company, and I am your Resident-Customer, and pursuant to the Equal Protection of the Law I have the Commercial Power to enforce your specific performance in media and investigative journalism with a Commercial Tort Claim Compensation Customer's Lien, called a Specific Performance Lien, guaranteed specifically and expressly by the Fifth Amendment to the U.S. Constitution, regarding commercial Tort Claim.

Pl. Aff., ¶2.

Even though plaintiff alludes to the Fifth Amendment in his affidavit, no such claim is pled. Even if pled, the Court finds the rationale expressed by the Tenth Circuit in <u>McKinley</u> persuasive. Further, neither the Complaint nor the subsequent pleadings refer to any action by a state actor that constituted a Fifth Amendment violation. As a result, there is no claim under the Fifth Amendment that can provide the Court with subject matter jurisdiction.

Plaintiff has also alleged that jurisdiction is conferred by 42 U.S.C. §1985. Complaint, ¶1. Section 1985 makes it illegal to: (1) prevent any person from accepting or holding any office; (2) obstruct justice or intimidate a party, witness, or juror; and (3) intimidate voters or "go in disguise on the highway or on the premises of another, for the purpose of depriving ... any person" of his or her civil rights. Plaintiff pled no facts in support of a §1985 complaint. Similarly, plaintiff has pled no facts, and the Court cannot conceive of any facts that would support jurisdiction under 28 U.S.C. §§1343, 2202 and 1367(a).[13] Plaintiff also sought a declaratory judgment pursuant to 28 U.S.C. §2201 that defendants violated his constitutional rights. But for the reasons previously stated,

---

[13]   28 U.S.C. §1343 confers original jurisdiction on the federal courts over civil actions commenced to recover damages in connection with any act done in furtherance of any conspiracy mentioned in 42 U.S.C. §1985; to recover damages from any person who fails to prevent or to aid in preventing wrong described in §1985; to redress the deprivation of constitutional rights, and to recover damages providing for the protection of civil rights.

28 U.S.C. §2202 is the "further relief" provision of the Declaratory Judgment Act and provides for "[f]urther necessary or proper relief based on a declaratory judgment or decree. . .against any adverse party whose rights have been determined by such judgment."

28 U.S.C. §1367(a) provides the district courts with supplemental jurisdiction over certain state law claims that are related to claims over which the district court has original jurisdiction.

plaintiff did not plead any constitutional causes of action.  Furthermore, the Declaratory Judgment Act does not confer jurisdiction.  Myrland v. United States, Civ. No. 12-2909 (PJS/TNL), 2013 WL 4501047 at *2 (D. Minn. Aug. 22, 2013) (citations omitted).

To the extent that plaintiff has alleged that defendants are liable to him for violating their "standard procedure" or "code of ethics" before erroneously reporting that plaintiff was "scheduled" to be sentenced to life in prison, the Court can conceive of no cause of action this allegation described, much less a federal question.

Finally, the Complaint made no allegations regarding Browning or Chanen, thus providing an independent basis for the dismissal of the Complaint against those two individuals.  Plaintiff's statement in his response that Browning "must have" provided Chanen with information is unsupported and, at any rate, relates exclusively to the defamation claim, a state law claim.

In sum, this Court concludes that plaintiff's alleged federal constitutional and statutory claims have no basis in fact or law.  Further, the Court cannot imagine any circumstances giving rise to federal claims when it so clear that his grievance is with reporter Chanen and the Star Tribune neither whom are state actors.

### B.  Plaintiff Has Not Established Diversity Jurisdiction

Defendants do not dispute that the parties appear to be diverse.  Def. Mem., p. 6.  However, defendants point out that plaintiff failed to allege that his claim exceeds $75,000.  Id.  As a result, no diversity jurisdiction exists.  Id.  This Court agrees.  Notwithstanding plaintiff's legally unsupportable claim in his response that defendants agreed to pay him $9.0 million, plaintiff failed to allege any amount in controversy in his

Complaint. Vague allegations regarding the amount in controversy are insufficient to establish jurisdiction pursuant to 28 U.S.C. §1332(a).

The amount in controversy is determined from the face of the complaint. Federal Home Loan Mortg. Corp. v. Madrigal, Civ. No. 12-6312, 2012 WL 3867356 at *3 (C. D. Cal. Sept. 6, 2012); South Side Theatres v. United West coast Theatres Corp., 178 F.2d 648, 649 (9th Cir. 1949) ("the statement of facts upon which the existence of federal jurisdiction depends must affirmatively and distinctly appear in the plaintiff's complaint.") Here, the Complaint is completely silent as to the amount in controversy. As a result, this Court concluded that plaintiff failed to establish jurisdiction under 28 U.S.C. §1332(a).

## IV. **RECOMMENDATION**

For the reasons set forth above, it is recommended that:

(1) Defendants' Motion to Dismiss [Docket No.46] be **GRANTED.**

(2) This matter be dismissed without prejudice as to plaintiff's state law defamation claim and with prejudice as to plaintiff's claims under the Fifth and Fourteenth Amendments, 42 U.S.C. §§1983, 1985.[14]

---

[14] As a general rule, when an action is dismissed for lack of subject matter jurisdiction, it is dismissed without prejudice, because the dismissal is not on the merits. See O'Grady v. Marathon County Child Support Agency, Civ. No. 05-2418 (JNE/JJG), 2006 WL 1715473 at *1 (D. Minn., June 19, 2006) (citing Frederiksen v. City of Lockport, 384 F.3d 437, 438-39 (7th Cir. 2004). "A jurisdictional disposition is conclusive on the jurisdictional question: the plaintiff cannot re-file in federal court. But it is without prejudice on the merits, which are open to review in state court to the extent the state's law of preclusion permits." Id. (quoting Frederiksen, 384 F.3d at 438); cf., Brereton v. Bountiful City Corp., 434 F.3d 1213, 1218 (10th Cir. 2006) ("[D]ismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is incapable of reaching a disposition on the merits of the underlying claims."); County of Mille Lacs v. Benjamin, 361 F.3d 460, 464 (8th Cir. 2004) ("A district court is generally barred from dismissing a case with

16

Dated: November 18, 2013

*Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

**NOTICE**

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **DECEMBER 2, 2013**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this Rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

---

prejudice if it concludes subject matter jurisdiction is absent.")). Here, the Court made a determination regarding the futility of plaintiff's claims under the Fifth and Fourteenth Amendments and 42 U.S.C. §§1983, 1985 and has recommended that those claims be dismissed with prejudice. Further, while not alleged in the Complaint, the Court also determined that plaintiff's other purported federal claims cannot proceed. As to the defamation claim, it should be dismissed without prejudice. In making this recommendation, the Court offers no opinion regarding the viability of this state law defamation claim.